**FILED**

December 15, 2011

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003959970

John Habashy (State Bar No. 236708)
**THE HABASHY LAW FIRM**
1025 N. Brand Blvd, Suite 301
Glendale, CA 91202
Telephone:    (818) 547-4357
Facsimile:    (888) 373-2107
john@habashylawfirm.com

Attorney for Debtor,
Malcolm Dwayne Pruitt

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

In Re:

MALCOLM DWAYNE PRUITT,

        Debtor.

CASE NO.  2:11-bk-45290-CMK

Chapter 13

Hon. Christopher M. Klein

**NOTICE OF MOTION AND MOTION TO COMPEL ABANDONMENT OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 554(b); DECLARATION OF DEBTOR MALCOLM DWAYNE PRUITT IN SUPPORT THEREOF**

Hearing Information:
Date:   January 24, 2012
Time:   2:00p.m.
Place: 501 I Street, 6th Floor,  Sacramento, CA
Courtroom: Courtroom 33

      **TO THE HONORABLE CHRISTOPHER M. KLEIN, DAVID CUSICK – CHAPTER 13 TRUSTEE AND ALL OTHER INTERESTED PARTIES:**

      **PLEASE TAKE NOTICE THAT ON** January 24, 2012 at 2:00 p.m., or as soon

---

**NOTICE OF MOTION AND MOTION TO COMPEL
ABANDONMENT OF PROPERTY OF THE ESTATE**

1

thereafter as may be heard, in Courtroom 33 of the above-captioned courthouse, the Debtor in the instant Bankruptcy proceeding, Malcolm Dwayne Pruitt ("Debtor"), by and through counsel, John R. Habashy, will move this Court to order the abandonment of the real property of this estate commonly known as 5820 Calvine Road, Sacramento, California, 95823 (the "Property").

The motion is and will be made upon the grounds that said real estate is burdensome and of inconsequential value to this estate and is and will be based upon this notice, memorandum of facts and authorities including declaration of Debtor Malcolm D. Pruitt submitted herewith and upon such other and further matters as the Court might consider at the time of the hearing.

**PLEASE BE ADVISED THAT** pursuant to Local Bankruptcy Rule 9014-1(f), any party objecting to the accompanying Motion must file and serve a written objection with the Court at least fourteen (14) days preceding the date of the hearing. Any opposition shall be accompanied by evidence establishing its factual allegations. Without good cause, no party shall be heard in opposition to a motion at oral argument if written opposition to the motion has not been timely filed. Failure to file a written response within fourteen (14) days preceding the date of the hearing may cause the Court to treat such failure as a waiver of your right to oppose this Motion and may grant the relief requested.

Dated: December 15, 2011                    THE HABASHY LAW FIRM


By:     /s/ John Habashy
        John Habashy (State Bar No. 236708)
        **THE HABASHY LAW FIRM**
        1025 N. Brand Blvd, Suite 301
        Glendale, CA 91202
        Telephone:    (818) 547-4357
        Facsimile:    (888) 373-2107
        john@habashylawfirm.com

        Attorney for Debtor,
        Malcolm Dwayne Pruitt

John Habashy (State Bar No. 236708)
**THE HABASHY LAW FIRM**
1025 N. Brand Blvd, Suite 301
Glendale, CA 91202
Telephone:    (818) 547-4357
Facsimile:    (888) 373-2107
john@habashylawfirm.com

Attorney for Debtor,
Malcolm Dwayne Pruitt

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In Re: | CASE NO.  2:11-bk-45290-CMK |
| MALCOLM DWAYNE PRUITT, | Chapter 13 |
| Debtor. | Hon. Christopher M. Klein |

**MOTION TO COMPEL ABANDONMENT OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 554(b); DECLARATION OF DEBTOR MALCOLM DWAYNE PRUITT IN SUPPORT THEREOF**

Hearing Information:
Date:   January 24, 2012
Time:   2:00p.m.
Place: 501 I Street, 6th Floor,  Sacramento, CA
Courtroom: Courtroom 33

TO THE HONORABLE CHRISTOPHER M. KLEIN, DAVID CUSICK – CHAPTER 13 TRUSTEE AND ALL OTHER INTERESTED PARTIES:

Malcolm Dwayne Pruitt (hereinafter "Debtor"), Debtor and party in interest in the above-

referenced Bankruptcy proceeding, hereby files his Motion to Compel Abandonment of Property of the Estate Pursuant to 11 U.S.C. § 554(b) and in support thereof respectfully submits as follows:

## MEMORANDUM OF FACTS AND AUTHORITIES

1. The Debtor herein filed a Chapter 13 bankruptcy case on October 25, 2011. David Cusick was appointed Chapter 13 Trustee. The Debtor filed schedules on November 7, 2011. In his schedule, the Debtor listed the following real property located in Sacramento County, California: 5820 Calvine Road, Sacramento, California, 95823, hereinafter referred to as the "Property". The Property in the City of Sacramento, County of Sacramento, State of California, is legally described as follows:

   "LOT 13 AS SHOWN ON THE MAP ENTITLED, "CARLIN ESTATES UNIT NO. 2", IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA ON MAY 11, 1990 IN BOOK 204 OF MAPS, PAGE 7."

2. The Debtor listed the value of the Property as $139,378.00 on Schedule A of his Bankruptcy petition. A true and correct copy of Debtor's Schedule A is attached hereto as **Exhibit A**.

3. The Property is owned by the Debtor and as an alternative to retaining the Property and continuing to make mortgage payments on the Property or losing the Property at a foreclosure auction, Debtor wishes to complete the proposed short sale, pending creditor approval.

4. The Property is encumbered by two mortgages. In the proposed short sale, Debtor will receive no proceeds and both mortgage lenders will take sizeable losses. A true and correct copy of the Residential Purchase Agreement and Joint Escrow Instructions is attached hereto as **Exhibit B**. A true and correct copy of the Listing Agreement is attached hereto as **Exhibit C**.

5. Debtor seeks an order to compel the Trustee to abandon The Property. 11 U.S.C §554(b) provides: "On request of a party in interest and after notice and a hearing, the Court may order the trustee to abandon any property of the estate that is burdensome to the estate or

that is of inconsequential value and benefit to the estate." The amount of the encumbrances against the Property greatly exceeds the proposed sale price of the Property. Since the amount of the encumbrances on the Property greatly exceeds the proposed sale price of the Property, the Property is of inconsequential value and benefit to the Estate. A true and correct copy of Debtor's Schedule D is enclosed as **Exhibit D**.

6. The holder of Debtor's First Deed of Trust, GMAC Mortgage, hereinafter referred to as "GMAC", has requested that this Court grant a motion to abandon the Property before they will grant a final decision on a short sale. GMAC will incur a substantial loss if the Property is sold at a foreclosure sale and would instead benefit from the proceeds of a short sale.

## **RELIEF REQUESTED**

WHEREFORE Debtor prays that the Chapter 13 Trustee be directed to abandon the real property located at 5820 Calvine Road, Sacramento, California, 95823, which is the subject of this application and that Debtor be granted all other such relief as this Court deems appropriate.


Dated:  December 15, 2011                                THE HABASHY LAW FIRM


                                          By:    _/s/ John Habashy_____
                                                 John Habashy (State Bar No. 236708)
                                                 **THE HABASHY LAW FIRM**
                                                 1025 N. Brand Blvd, Suite 301
                                                 Glendale, CA 91202
                                                 Telephone:    (818) 547-4357
                                                 Facsimile:    (888) 373-2107
                                                 john@habashylawfirm.com

                                                 Attorney for Debtor,
                                                 Malcolm Dwayne Pruitt

# DECLARATION OF DEBTOR MALCOLM DWAYNE PRUITT

I, Malcolm Dwayne Pruitt, hereby declare and state as follows:

1.      I am the Debtor in the above-referenced case (Bankruptcy Case No. 2:11-bk-45290) and if called upon as a witness, I could and would competently testify thereto in a court of law.

2.      I, the Debtor, listed in my bankruptcy schedules the real property which is the subject of this motion, which is located at 5820 Calvine Road, Sacramento, California, 95823. A true and correct copy of Schedule A is attached hereto as **Exhibit A**.

3.      The property is proposed to be sold for $125,000.00. A true and correct copy of the Residential Purchase Agreement and Joint Escrow Instructions is attached hereto as **Exhibit B**. A true and correct copy of the Listing Agreement is attached hereto as **Exhibit C**.

4.      The sale is a short sale with the lenders GMAC Mortgage and Specialized Loan Servicing having taken substantial losses. Before the lenders will make a final decision on agreeing to a short sale, they are requiring that this court grant an order compelling the Trustee to abandon the property. A true and correct copy of the Debtors' schedule D is attached as **Exhibit D**.

5.      Based on Fannie Mae guidelines, I am informed that I will have substantially less hurdles to qualify for a home mortgage in the future by conducting the short sale as opposed to allowing the lender to move forward with a foreclosure. This is a reflection of my good faith effort to mitigate damages.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 15th day of December, 2011 at Sacramento, California.

_/s/ Malcolm D. Pruitt_____
Malcolm D. Pruitt
Debtor

---

**DECLARATION OF DEBTOR MALCOLM D. PRUITT**

# EXHIBIT A

In re    **Malcolm D Pruitt** _____,   Case No. _____**2011-45290**_____

                                            Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **SFR (Primary Residence)**<br>**Location: 8580 Culpepper Drive, Sacramento CA 95823**<br><br>Valued on Eppraisal.com | **Fee simple** | - | 151,171.00 | 494,745.00 |
| **SFR (Rental)**<br>**Location: 5820 Calvine Road, Sacramento, CA 95823**<br><br>Valued on Eppraisal.com | **Fee simple** | - | 139,378.00 | 394,050.00 |
| **SFR (Rental)**<br>**Location: 5310 Jacinto Ave., Sacramento CA 95823**<br><br>Valued on Eppraisal.com | **Fee simple** | - | 98,775.00 | 288,017.00 |

|  |  |  |
|---|---|---|
| Sub-Total > | 389,324.00 | (Total of this page) |
| Total > | 389,324.00 | |

  __0__   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

# EXHIBIT B



ONE KEY ESCROW IS LICENSED BY THE DEPARTMENT OF
REAL ESTATE OF THE STATE OF CALIFORNIA, LICENSE NUMBER 01873088

ADDENDUM TO RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS DATED
October 27, 2011

Aggie Uzunyan
Escrow Officer

**Escrow No.:** 500194-AU
**Date:** November 7, 2011

| | |
|---|---|
| Buyer has handed ONE KEY ESCROW initial deposit in the amount of | 1,200.00 |
| Prior to close of escrow, buyer will deposit an additional amount of | 122,800.00 |

**Total Consideration** **$124,000.00**

I/We will deliver to you any instruments which this escrow requires, fully executed, all of which you are instructed to use provided that on or before **December 9, 2011** you hold a policy of title insurance issued by **Ticor Title Co.** with a liability of **$124,000.00** covering property:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

**SELLER STATES THAT THE PROPERTY ADDRESS IS:** 5820 Calvine Court, Area of Sacramento, CA 95823

**TITLE POLICY TO SHOW TITLE VESTED IN:** Sean Nguyen and Crystal Nguyen, Complete Vesting To Follow

**FREE FROM ENCUMBRANCES EXCEPT:**

(1) First Half General and special Taxes for the fiscal year 2011 and 2012, including bonds, special assessments and personal property taxes, if any, assessed against former owner, and/or supplemental taxes assessed pursuant to the provisions of Chapter 498, Statutes of 1983 of the State of California. (Change of Ownership will affect the taxes to be paid. A Supplemental Tax Bill will be issued and BUYER accepts all responsibility for all additional taxes due because of said reassessment. TAX BILLS ISSUED AFTER THE CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYERS AND SELLERS.)

(2) Covenants, conditions, restrictions, reservations, rights, rights of way, and easements, and any oil, gas, or mineral reservations now of record, if any.

**INSTRUCTIONS:**

A. **AGREEMENT:** RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS dated October 27, 2011 hereinafter referred to as the "AGREEMENT", together with COUNTER OFFER (s) #1, and these General Provisions, constitute instructions to One Key Escrow, hereinafter referred to as the "ESCROW HOLDER". Escrow holder shall be concerned only with those items as specifically instructing escrow holder, and shall not be responsible for any other items contained in said Agreement.

B. **SHORT SALE CONTINGENCY:** Due to the fact that the seller herein does not have sufficient equity in the property to payoff all existing lien holders and costs involved in this transaction is contingent upon the Seller's existing lender(s) accepting a short payoff. Escrow Holder's receipt of the existing lender's written conditional approval of a short payoff from the existing lender(s), and seller's written acknowledgement and approval of same, shall satisfy this contingency in its entirely.

Escrow Holder is authorized and instructed to obtain the existing lender's written approval of a final, estimated closing statement prior to the close of escrow. Parties hereto hereby acknowledge that they are aware that if the lender(s) of record decline to allow Seller's account to be debited for either pest control repairs or report and/or a home warranty policy, Buyer shall have the option to obtain same at their own expense. However, Escrow Holder is not to be responsible to obtain any further written instructions from Buyer or Seller regarding the waiver of same except that of the existing lenders. Parties hereto are aware that the escrow fee charge to Seller and Buyer may not be equal as Seller's escrow fee may be inclusive. Seller(s) is hereby advised to seek legal advise from an attorney and/or tax accountant in reference to this transaction regarding the seller;s tax and/or legal consequences and/or liability that may result from existing lender(s) accepting the short payoff through this transaction. It is further acknowledge that IN THE EVENT the existing lender(s) complete foreclosure on the loan(s) of record and due to the fact that the Seller(s) would no longer be the legal vested owners of the subject property, Escrow Holder is authorized and instructed to notify all parties, and without further instructions, cancel this escrow and return the Buyer's deposit.

C. **ALL CASH:** All parties are aware there will be NO Financing through this escrow.

(CONTINUED)

Seller's Initials: _____/_____          Buyer's Initials: _____/_____

Date: November 7, 2011                                    Escrow No.: 500194-AU

Page 2 of 6: Additional instructions made a part of previous pages as fully incorporated therein.

D.  **NATURAL HAZARD ZONE DISCLOSURE REPORT:** Buyer shall pay for a natural hazard zone disclosure report issued by Property ID.

E.  **TITLE COMPANY:** Owners title policy to be issued by Ticore Title Company.

F.  **PRELIMINARY TITLE REPORT:** Escrow holder is instructed to order a copy of the Preliminary Title Report. Upon receipt, forward same to Buyer who will than have 17 days from acceptance in which to approve or disapprove in writing. Absence of written notification by Buyer (s) of disapproval within specified time shall be deemed Buyer's approval of all documents and deposit of final closing funds by Buyer shall satisfy this condition in full.

G.  **PRORATIONS:** Prorate as of Close of Escrow
     Real Property taxes based on latest tax bill or on amount furnished by title company.

H.  **AGENCY INFORMATION:** The following agency relationship(s) are hereby confirmed for this transaction:

     Listing Agent **JohnHart Corp** is the agent for the Seller
     Selling Agent **Keller Williams** is the agent for the Buyer.

I.  **OCCUPATION:** Buyer **DOES** intend to occupy Property as Buyer's Primary residence.

J.  **POSSESSION:** Possession and occupancy to be delivered to Buyer on date of recordation.

**************************************************

**AS A MATTER OF RECORD ONLY, WITH WHICH YOU ARE NOT TO BE CONCERNED, THE PARTIES HEREBY AGREE AS FOLLOWS:**

THESE ESCROW INSTRUCTIONS ARE NOT INTENDED TO SUPERSEDE THE REAL ESTATE PURCHASE CONTRACT AND RECEIPT FOR DEPOSIT, BUT TO CARRY OUT ITS TERMS AND CONDITIONS IN CONSUMMATING THE PURCHASE AND SALE, EXCEPT AS MAY BE AMENDED OR MODIFIED BY THE MUTUAL WRITTEN INSTRUCTIONS OF THE PARTIES.

IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW, SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.

(CONTINUED)

Seller's Initials:  _____/_____                          Buyer's Initials:  _____/_____

Page 3 of 6: Additional instructions made a part of previous pages as fully incorporated therein.

## GENERAL PROVISIONS - REAL ESTATE SALES

**LIABILITY OF ESCROW HOLDER:** In performing any of Escrow Holder's duties under these Escrow Instructions, Escrow holder shall not be liable to any Party for damages, losses, or expenses, except for gross negligence or willful misconduct on Escrow Holder's part. Escrow Holder shall not incur any liability for (i) any act or failure to act made or omitted in good faith, or (ii) any action taken or omitted in reliance upon any document, including any written statement or affidavit provided for in these instructions that Escrow Holder shall in good faith believe to be genuine, nor will Escrow Holder be liable or responsible for forgeries, fraud, impersonations, or determining the scope of any agents authority. In addition, Escrow Holder may consult with legal counsel in connection with Escrow Holder's duties under these instructions and you shall be fully protected in any act taken, suffered, or permitted by you in good faith in accordance with the advice of counsel.

**FEES AND EXPENSES:** It is understood that fees and usual charges agreed upon for Escrow Holder's services shall be considered compensation for ordinary services as contemplated by these instructions. In the event that the conditions of this escrow are not promptly fulfilled, or if Escrow Holder renders any service not provided for in these instructions, or if the Parties request a substantial modification of its terms; or if any controversy arises, or if Escrow Holder is made a Party to, or intervene in, any litigation pertaining to this escrow or its subject matter, Escrow Holder shall be reasonably compensated for such extraordinary services and reimbursed for all costs, attorney's fees, including allocated costs of in-house counsel, and expenses occasioned by the default, delay, controversy or litigation and Escrow Holder shall have the right to retain all documents and/or things of value at any time held by you in escrow until such compensations, fees, costs, and expenses shall be paid. The undersigned jointly and severally promise to pay such sums upon demand.

**CONTROVERSIES:** If any controversy arises between the Parties to this escrow, its terms or conditions, Escrow Holder will not be required to determine the controversy or take any action regarding it. Escrow Holder may hold all documents and funds held in escrow, except all cost, expenses, charges and reasonable attorney fees incurred by Escrow Holder due to the interpleader action and which the Parties jointly and severally agree to pay. Upon initiating such action, Escrow Holder shall be fully released and discharged of and from all obligations and liability imposed by the terms of this escrow.

**INDEMNIFICATION OF ESCROW HOLDER:** The parties and their respective successors and assigns agree jointly and severally to indemnify and hold One Key Escrow harmless against any and all losses, claims, damages, liabilities, and expenses, including reasonable costs of investigation, counsel fees, including allocated costs of in-house counsel, and disbursements that may be imposed on Escrow Holder or incurred by Escrow Holder in connection with performance of Escrow Holder's duties under these instructions, including but not limited to any litigation arising from these instructions involving its subject matter. Escrow Holder shall have a first lien on the property and papers held under these instructions for such compensation and expenses.

**GOVERNING LAW:** These instructions are to be construed and interpreted according to California law.

**COPIES OF ESCROW DOCUMENTS:** Escrow Holder shall furnish a copy of these instructions, any amendments, closing statements, and/or documents deposited into escrow to the lender or lenders, real estate brokers, attorney and/or accountant involved in the transaction, as identified by either of the Parties to the escrow and upon request of such lenders, brokers, attorneys, or accountants.

**EXAMINATION OF PROPERTIES:** It is understood that You are to make no examination of the property described in these instructions and that, unless otherwise provided, You are not to be concerned with any conditional sales contract, lease, contract, security agreement or similar document that may affect such property, and are not to be responsible for the delivery of any papers other than those described in these instructions.

**30 DAY MONTH:** Unless otherwise expressly provided, prorations and payoffs through escrow, if any, are to be made on the basis of a 30 day month, as follows: real property taxes and assessments or bonds on figures provided by the Title Report, excluding taxes on personal property not being transferred through this escrow, and such figures are to be construed as covering the period from July 1 through June 30; rents on the basis of statement(s) furnished by the seller and approved by buyers; principal and interest on loans of record based on statement(s) by the beneficiary or holders of notes for collection; interest on new loans by endorsements of notes or as called for by lender; and Homeowner's Association dues on a basis of statements furnished by the Homeowners Association.

**FULFILLMENT OF ESCROW CONDITIONS:** If the conditions of the escrow have not been fulfilled on or before the date designated in these instructions, Escrow Holder shall complete the escrow at any time thereafter as soon as the conditions are fulfilled, unless the parties have specifically instructed Escrow Holder otherwise. If a written demand for cancellation or for the return of money or documents is given by either Party to the escrow, Escrow Holder may stop all further action and wait for mutual written instructions or settlement of the controversy as provided in these instructions.

**PRELIMINARY CHANGE OF OWNERSHIP:** The County Recorder requires that a Preliminary Change of Ownership Report accompany the Deed at time of recording. Buyer will complete, sign and deliver this report to Escrow Holder. Escrow Holder shall not be concerned with its validity, regularity, or sufficiency. A FEE MAY BE ASSESSED TO BUYER BY THE COUNTY RECORDER IF THIS REPORT IS NOT TIMELY OR COMPLETE. IF SUCH FEE IS ASSESSED AT THE TIME THE DOCUMENTS ARE PRESENTED FOR RECORDING IN THIS ESCROW, ESCROW HOLDER IS INSTRUCTED TO CHARGE THE BUYER AT THE CLOSE OF ESCROW FOR SUCH FEE AS CHARGED BY THE COUNTY RECORDER.

**1099 FORM:** If required by law, the seller shall hand to Escrow Holder an IRS gross proceeds report, which you are to forward to the IRS in accordance with the law, and a copy thereof is to be delivered to the seller at the close        of escrow. This is NOT in lieu of any tax withholding which may become applicable under FIRPTA. ESCROW HOLDER IS AUTHORIZED AND INSTRUCTED TO INSERT BUYER'S PART OF REAL ESTATE TAX PAID, OVER THE SIGNATURE

(CONTINUED)

Seller's Initials: _____/_____                    Buyer's Initials: _____/_____

Date: November 7, 2011                                    Escrow No.: 500194-AU

Page 4 of 6: Additional instructions made a part of previous pages as fully incorporated therein.

OF THE SELLER, ON SAID 1099, AT THE CLOSE OF ESCROW WITHOUT ANY LIABILITY ON THE PART OF ESCROW HOLDER FOR SO DOING.

**IN THE EVENT** EITHER PARTY REQUESTS CANCELLATION OF THIS ESCROW AT ANY TIME, ALL PARTIES ARE AWARE THAT THIS ESCROW WILL NOT BE CONSIDERED CANCELLED, AND NO FUNDS WILL BE DISBURSED UNTIL ESCROW HOLDER HAS RECEIVED MUTUALLY SIGNED CANCELLATION INSTRUCTIONS FROM ALL BUYERS AND SELLER.

**CLOSE OF ESCROW:** When referred to hereinafter, the close of escrow shall be the day the instruments of conveyance are recorded with the county recorder.

**PROPERTY RECORDS REPORT:** Buyer and Seller hereby release Escrow Holder from any responsibility and liability in connection with obtaining City Reports as required by local ordinance. In the event seller provides a signed application and fee for such report, escrow holder shall facilitate the application process, but shall not be responsible for the timeliness of City response.

**CLOSING FUNDS:** Pursuant to the "Good Funds" legislation, Assembly Bill 512 (AB 512) effective January 1, 1990, the parties hereto are made aware that closing funds to be deposited by Buyer and/or Lender must be CLEARED prior to recordation (close of escrow). Please be advised funds to close must be in the form of a Cashier's Check drawn on a bank with clearing house in the State of California OR a wire transfer to ONE KEY ESCROW Trust Account, and be deposited at least (2) two business days prior to recording of documents. Buyers deposit of Final Funds with Escrow Holder shall be deemed satisfaction and removal of all contingencies and approval of loan documents, terms and conditions. ALL FINAL FUNDS DUE FROM BUYER TO CLOSE ESCROW IN EXCESS OF $100,000.00 MUST BE WIRE TRANSFERRED.

**ALLOCATION OF COSTS:** Escrow Holder is instructed to debit Buyer and Seller in accordance with "Allocation of Costs" in the Agreement, and pay bills as presented at the close of escrow. Escrow Holder shall not be responsible for paying bills received after the close of this escrow. and Buyer and Seller hereby release One Key Escrow from any liability/responsibility in connection hereto accordingly. All parties agree to pay escrow fees and charges, including messenger fees, overnight delivery charges plus handling and notary fees, if applicable. If not provided for in the Purchase Agreement, the Owners title insurance premium will be charged to Seller and the ALTA Lender's Policy, if applicable, will be charged to Buyer at the close of escrow, and all other closing costs are to be charged pursuant to the Purchase Agreement. Unless otherwise instructed, Escrow Holder will debit the Seller for any transfer tax that may be imposed by any City or County in which the subject property of this escrow is located.

**TITLE INSURANCE:**

A) You are instructed to open a title order for title insurance to the subject real property in the condition identified in the escrow instructions by the parties. However, you are not required to submit any title report issued or documents described in any title report in connection with this escrow to any party or agent unless directed to do so in written instructions. You may, however, do so without incurring liability to any parties for such submission. You are hereby authorized to submit such report to any proposed lender, and are authorized to deliver assurances of title, and insurance policies, if any, to hold or for senior encumbrances, then to Buyer or his order.

B) The parties authorize the recordation of any instrument delivered through this escrow if necessary or proper for the issuance of the required policy of title insurance or for the closing of this escrow. Funds, instructions or instruments received in this escrow may be delivered to, or deposited with any title insurance company or title company to comply with the terms and conditions of this escrow. Recording fees shall be charged to the account of benefited party.

C) Buyer and Seller authorize and instruct Escrow Holder to utilize the legal description deposited into escrow or provided by the Title Insurance Company in this transaction for the preparation of any deed or other documentation necessary to close this transaction. Escrow Holder has no duty to investigate and does not warranty the accuracy of said legal description and is released of any and all liability, responsibility and is held harmless in connection thereto.

**CANCELLATION:** The parties, jointly and severally agree that if escrow cancels, is terminated or otherwise not closed, the parties shall pay you any costs and expenses which you have incurred or have become obligated for in processing this transaction including, but not limited to, courier fees, filing fees, attorneys' fees and costs, third-party vender fees for services performed for this escrow, and an escrow cancellation fee for services rendered in an amount of $500 or up to the full amount of the escrow fee depending on the status of the escrow st "cancellation." The parties agree that such costs, expenses and fees shall be paid from the funds already on deposit or deposited in escrow before any cancellation or other termination of this escrow is effective. The parties agree that said charges for expense and, costs and fees may be apportioned between Buyer and Seller in a manner which, Escrow Holder's sole discretion, it considers equitable and Escrow Holder's decision will be binding and conclusive upon the parties. Except as provided in the Purchase Agreement, upon receipt of mutual cancellation instruction, levies or garnishments in form satisfactory to Escrow Holder, you are instructed to disburse the escrow funds and instruments in accordance with such cancellation instructions, order, judgment or accompanying write and subject escrow shall without further notice be considered terminated and cancelled. IN THE EVENT ANY PARTY REQUESTS CANCELLATION OF THIS ESCROW AT ANY TIME ALL SUCH PARTIES ARE AWARE THAT THIS ESCROW WILL NOT BE CONSIDERED CANCELLED AND NO FUNDS WILL BE DISBURSED UNTIL ESCROW HOLDER HAS RECEIVED SIGNED CANCELLATION INSTRUCTIONS OR COURT ORDER IN FORM SATISFACTION TO ESCROW.

**NO ACTIVITY CANCELLATION:** The principals to the transaction agree that if no additional instructions are received from one or both of the principals in this transaction within 120 days from the date escrow is to close, or

(CONTINUED)

Seller's Initials: _____/_____                          Buyer's Initials: _____/_____

Date: November 7, 2011                                    Escrow No.: 500194-AU

Page 5 of 6: Additional instructions made a part of previous pages as fully incorporated therein.

any written extension thereof, the Escrow Holder shall at its option consider the escrow cancelled and is authorized to take a cancellation fee in the amount of $500.00 or up to the full amount of the escrow fee, based on Escrow Holder s determination of services performed and disburse any remaining deposits, documents or other items held by Escrow Holder to the depositors or parties specified in the instructions. Nothing herein restricts the ability of an Escrow Holder to file an interpleader action in the event of a dispute as to the proper distribution of funds deposited with escrow.

**HOLD OPEN FEE:** Unless otherwise instructed in writing, in the event that this escrow does not close or cancel for any reason, 60 days after the original designated closing date, Escrow Holder is authorized and instructed to withdraw from any funds on deposit in escrow, each month and pay to itself a holding fee of $25.00 for each calendar month or fraction thereof, that undistributed funds are retained in escrow.

**DISCLOSURES/RETROFIT:** Buyer and Seller hereby release Escrow Holder from any and all responsibility and liability in connection with a) the obtaining, delivery and signing of any disclosures required in this transaction and b) compliance with any mandatory government retrofit standards and inspections. Said items are a part of the "Agreement" between Buyer and Seller, and shall be handled outside of escrow in accordance with the terms of said AGREEMENT.

**1099 FORM:** In order to comply with Tax Reform Act of 1986, SELLER herein agrees to deposit into escrow a 1099 tax report and instructs Escrow Holder to prepare a final return at the close of escrow and forward same to the Internal Revenue Service. SELLER understands and agrees that escrow cannot close without said report.

**FIRPTA:** If the seller is a foreign person or entity as defined in the Foreign Investors Real Property Tax Act of the Internal Revenue Code, the BUYER will be required to withhold ten percent (10%) of the gross purchase price and forward same to the IRS. Each seller/transferor will deposit in escrow either: a) Seller's affidavit that seller is not foreign, or b) a qualifying statement issued by the IRS. Absent the seller's affidavit or qualifying statement prior to the close of escrow buyer and seller will deliver to escrow holder in writing joint mutual instructions setting forth escrow holder's duties regarding the withhold.

**CAL-FIRPTA: NOTIFICATION TO BUYER AND SELLER REGARDING TAX WITHHOLDING REQUIREMENTS OF CALIFORNIA REVENUE AND TAXATION CODE SECTION 18662 AS AMENDED BY AB2065 ON SALE OF REAL PROPERTY:** As of January 1, 2003, California law requires "pay as you go" (prepayment) of income tax by withholding of 3-1/3% on all sales of real property for individual sellers of real property, whether resident or non-resident. Individual sellers may certify under penalty of perjury on Form 593-C that as individual sellers they are not subject to withholding due to one of the exemptions: 1) Sales price is not greater than $100,000.00; 2) The property is a principal residence of the transferor; 3) The property will be replaced in a like kind 1031 tax deferred exchange; 4) Certain foreclosure transactions; or 5) Seller certifies that the sale will result in a loss for California tax purposes. Non-individual sellers: 1) Corporations with a permanent place of business in California; 2) Partnerships or LLCs; 3) Tax exempt entities, insurance companies, IRA's or qualified pension plans; 4) Irrevocable trusts with a California trustee; or 5) Estates with a California decedent or bank or banks acting as a fiduciary for a trust; may also certify under penalty of perjury that they are not subject to withholding due to one of the exemptions. **The parties acknowledge that escrow holder will take no action regarding withholding without further mutual written instructions of buyer and seller in form satisfactory to escrow, together with completion of Franchise Tax Board forms. California Revenue and Taxation Code Section 18662 (as amended by AB2065) requires a BUYER of real property to withhold under CAL FIRPTA if the above-described exemptions are not met.**

For failure to withhold, the BUYER may become subject to a penalty in the amount equal to the greater of 10% of the amount required to be withheld or five hundred dollars ($500.00). For additional information, contact: FRANCHISE TAX BOARD, WITHHOLD AT SOURCE UNIT, P.O. BOX 651, SACRAMENTO, CA 95812-0651, PHONE: (916) 845-4900 OR Toll Free AT (888) 792-4900.

**FAX SIGNATURES:** The signatures of any party herein shall be deemed delivered to One Key Escrow when escrow holder receives a signed fax from the signatory. Escrow holder is instructed to rely and act upon this faxed instruction in the same manner as if original signed instructions or other documents were deposited in escrow. The party executing the faxed copy agrees to forward signed hard copies of such fax within 48 hours of transmission. Escrow holder shall have no liability and/or responsibility to obtain said original executed documents of the faxed material. Further, Escrow holder shall have no liability to any party for relying upon facsimile instructions that were erroneously transmitted to escrow holder. Escrow holder may also rely on faxed copies of payoff demands, lender's instructions or homeowners' association documentation or any other paper work faxed to you to comply with these instructions.

**DEPOSIT OF FUNDS IN ESCROW:** All funds in this escrow shall be deposited with other escrow funds in a general escrow trust account or accounts of One Key Escrow with any state or national bank and may be transferred to any other such general escrow trust account or accounts. All disbursements shall be made by check of One Key Escrow. Deposits by a bank, trust company, insurance company or savings and loan association by delivery of its check or funds into this escrow may, in the sole discretion of One Key Escrow, be treated as the equivalent of deposit in this escrow. In the event escrow deposits are invested for the benefit of the parties during the course of the escrow, an escrow fee will be charged for handling such investment.

**All parties hereto understand and acknowledge that JohnHart Corp. holds an ownership interest in One Key Escrow and Escrow Holder which may be representing parties to this transaction, and therefore have a financial interest herein.**

**EACH PARTY SIGNING THESE INSTRUCTIONS HAS READ THE ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS CONTAINED HEREIN AND APPROVES, ACCEPTS AND AGREES TO BE BOUND THEREBY AS THROUGH SAME APPEARED OVER THEIR SIGNATURES. ALL PARTIES SIGNING THIS AGREEMENT HEREBY ACKNOWLEDGE RECEIPT OF A COPY OF THESE INSTRUCTIONS.**

(CONTINUED)

Seller's Initials: _____/_____                        Buyer's Initials: _____/_____

Date: November 7, 2011                                                    Escrow No.: 500194-AU

Page 6 of 6: Additional instructions made a part of previous pages as fully incorporated therein.

The foregoing terms, provisions, conditions, and instructions, and those "Additional Escrow Conditions and Instructions" contained herein are hereby approved and accepted in their entirety and concurred in by me. I will hand you necessary documents called for on my part to cause title to be shown as above which you are authorized to deliver when you hold for my account the sum of **$124,000.00** within the time as above provided, pay your escrow charges, my recording fees, charges for evidence of title as called for, whether or not this escrow is consummated, except those the buyer agrees to pay. You are hereby authorized to pay bonds, assessments, taxes, and any liens of record to show title as called for, affix internal revenue stamps on deed as required.

ESCROW COMPANIES ARE NOT AUTHORIZED TO GIVE LEGAL ADVICE. IF YOU DESIRE LEGAL ADVICE, CONSULT YOUR ATTORNEY BEFORE SIGNING.

EACH PARTY SIGNING THESE INSTRUCTIONS HAS· READ THE ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS CONTAINED HEREIN AND APPROVES, ACCEPTS AND AGREES TO BE BOUND THEREBY. ALL PARTIES SIGNING THIS AGREEMENT HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THESE INSTRUCTIONS.

I/We agree to pay FUNDS REQUIRED TO CLOSE ESCROW UPON DEMAND.

SELLER(S) ONLY: The foregoing terms, provisions, conditions, and instructions, and those "General Provisions" contained herein are hereby approved and accepted in their entirety and concurred in by me. I will hand you necessary documents called for on my part to cause title to be shown as above which you are authorized to deliver when you hold for my account the sum of $124,000.00 within the time as above provided, pay your escrow charges, my recording fees, charges for evidence of title as called for, whether or not this escrow is consummated, except those buyer agrees to pay. You are hereby authorized to pay bonds, assessments, taxes, and any liens of record to show title as called for, affix documentary tax on deed as required.

**SELLERS:**                                          **BUYERS:**

_____          _____
Malcolm D. Pruitt                                      Sean Nguyen

_____          _____
Twyla D. Pruitt                                        Crystal Nguyen

**CURRENT ADDRESS:**                              **CURRENT ADDRESS:**

8580 Culpepper Drive Sacramento, CA  95823        _____

Telephone: _____          Telephone: _____

# EXHIBIT C



CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
**(Exclusive Authorization and Right to Sell)**
**(C.A.R. Form RLA, Revised 12/10)**

1. **EXCLUSIVE RIGHT TO SELL:** _____ *Malcolm D. Pruitt* , *Twyla D. Pruitt* _____ ("Seller")
hereby employs and grants _____ *JohnHart Corp.* _____ ("Broker")
beginning (date) *September 2, 2011* and ending at 11:59 P.M. on (date) *September 2, 2012* ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property in the City of _____ *Sacramento* ,
County of _____ *Sacramento* , Assessor's Parcel No. _____ *117-0960-031* ,
California, described as: _____ *5820 Calvine Rd.* _____ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
ADDITIONAL ITEMS EXCLUDED: _____
ADDITIONAL ITEMS INCLUDED: _____
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

3. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: *One Hundred Four Thousand* _____
   _____ Dollars ($ *104,000.00* ).
   B. Additional Terms: _____

4. **COMPENSATION TO BROKER:**
   Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ *6.000* percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____ , as follows:
   AND
   (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a buyer(s) who offers to purchase the Property on the above price and terms, or on any price or terms acceptable to Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension).
   OR (2) If within *90* calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 4A(2) unless, not later than 3 calendar days after the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation due under paragraph 4A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 4A, either ☐ _____ percent of the purchase price, or ☐ $ _____ .
   (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____
   (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
   (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

RLA REVISED 12/10 (PAGE 1 OF 4)
**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 4)**

Agent: Harout Keuroghlian            Phone: 818-246-1099          Fax: 888-965-6161          Prepared using zipForm® software
Broker: John Hart Corp. 1025 N. Brand Blvd. #320 Glendale, CA 91202

5820 Calvine Rd.
Property Address: _Sacramento, CA  95823_ _____ Date: _September 2, 2011_

5. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

6. **MULTIPLE LISTING SERVICE:** All terms of the transaction, including financing, if applicable, will be provided to the selected MLS for publication, dissemination and use by persons and entities on terms approved by the MLS. Seller acknowledges that Broker is required to comply with all applicable MLS rules as a condition of entry of the listing into the MLS and Seller authorizes Broker to comply with all applicable MLS rules. MLS rules require that the listing sales price be reported to the MLS. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 48 hours or some other period of time after all necessary signatures have been obtained on the listing agreement. However, Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS a form signed by Seller (C.A.R. Form SEL or the locally required form).
Information that can be excluded:
   A. **Internet Display;**
      **(1)** Seller can instruct Broker to have the MLS not display the Property on the Internet. Seller understands that this would mean consumers searching for listings on the Internet may not see information about the Property in response to their search; **(2)** Seller can instruct Broker to have the MLS not display the Property address on the Internet. Seller understands that this would mean consumers searching for listings on the Internet may not see the Property's address in response to their search.
   B. **Features on MLS Participant and Subscriber Websites;**
      **(1)** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites that display the Property listing to have (i) the ability to write comments or reviews about the Property on those sites; or (ii) the ability to hyperlink to another site containing such comments or reviews if the hyperlink is in immediate conjunction with the Property. Seller understands (i) that this opt-out applies only to Websites of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites: that this would mean the consumers searching for listings on the Internet will not see the Property's address in response to their search.
      **(2)** Seller can instruct Broker to advise the MLS that Seller does not want MLS Participant or Subscriber Websites that display the Property listing to operate (i) an automated estimate of the market value of the Property; or (ii) have the ability to hyperlink to another site containing such automated estimate of value if the hyperlink is in immediate conjunction with the Property. Seller understands (i) that this opt-out applies only to Websites of MLS Participants and Subscribers who are real estate brokers and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites: that this would mean the consumers searching for listings on the Internet will not see the Property's address in response to their search.
Seller acknowledges that for any of the above opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller (C.A.R. Form SEL or the locally required form). Information about this listing will be provided to the MLS of Broker's selection unless a form instructing Broker to withhold the listing from the MLS is attached to this listing Agreement.

7. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

8. **BROKER'S AND SELLER'S DUTIES:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized to order reports and disclosures as appropriate or necessary and advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property. **Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments and attorney fees arising from any incorrect information supplied by Seller, or from any material facts that Seller knows but fails to disclose.**

9. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

10. **AGENCY RELATIONSHIPS:**
   A. **Disclosure:** If the Property includes residential property with one-to-four dwelling units, Seller shall receive a "Disclosure Regarding Agency Relationships" form prior to entering into this Agreement.
   B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 4F.
   C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and Buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and such Buyer. In the event of an exchange, Seller hereby consents to all parties of such agency and compensation for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RLA REVISED 12/10 (PAGE 2 OF 4)

Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 4)

Calvine Road

5820 Calvine Rd.

Property Address: Sacramento, CA 95823                                   Date: September 2,

**D.   Other Sellers:** Seller understands that Broker may have or obtain listings on other properties, and that potential
     consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller
     Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement.

**E.   Confirmation:** If the Property includes residential property with one-to-four dwelling units, Broker shall confirm
     relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase a

**11.  SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property, or per
     attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to
     inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of
     Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during sh
     Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller.

**12.  KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Proper
     cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and a
     prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers a
     theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) aut
     to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupa
     permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13.  SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14.  DISPUTE RESOLUTION:**
     **A.   MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them out of this Agree
          resulting transaction, before resorting to arbitration or court action, subject to paragraph 14B(2) below. Paragraph
          applies whether or not the arbitration provision is initialed. Mediation fees, if any, shall be divided equally amon
          involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first
          resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall n
          to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS
          PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

     **B.   ARBITRATION OF DISPUTES:** (1) Seller and Broker agree that any dispute or claim in law or equity arisi
          them regarding the obligation to pay compensation under this Agreement, which is not settled through med
          be decided by neutral, binding arbitration, including and subject to paragraph 14B(2) below. The arbitrato
          retired judge or justice, or an attorney with at least 5 years of residential real estate law experience, unless
          mutually agree to a different arbitrator, who shall render an award in accordance with substantive Californ
          parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05.
          respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California C
          Procedure. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction. In
          of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

          (2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: The following matters are excluded from me
          arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trus
          or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (
          or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, sma
          bankruptcy court. The filing of a court action to enable the recording of a notice of pending action,
          attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the m
          arbitration provisions.

          **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY
          ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION
          BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP AN
          YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INI
          THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEA
          THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISIO
          REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE CO
          TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDU
          AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

          **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTE
          OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO
          ARBITRATION."**

          Seller's Initials _____ / _____     Broker's Initials _____

Property Address: 5820 Calvine Rd.
Sacramento, CA  95823                                    Date: September 2, 2011

**15. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**16. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within 5 Days After its execution.

**18. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)

**19. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 14A.

**20. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____  Malcolm D. Pruitt  Date 9/7/11
Address 5820 Calvine Rd.          City Sacramento          State CA  Zip 95823
Telephone _____ Fax _____ E-mail _____

Seller _____  Twyla D. Pruitt  Date 9/7/11
Address 5820 Calvine Rd.          City Sacramento          State CA  Zip 95823
Telephone _____ Fax _____ E-mail _____

                                                                   DRE Lic. # 01873088
Real Estate Broker (Firm) JohnHart Corp.
By (Agent) _____  Harout Keuroghlian DRE Lic. # 01211483  Date 09/02/2011
Address 1025 N. Brand Blvd. Suite # 320  City Glendale          State CA  Zip 91202
Telephone (818)246-1099  Fax (888)965-6161  E-mail Harout@jhhre.com

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**RLA REVISED 12/10 (PAGE 4 OF 4)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 4)**          Calvine Road

Sep 07 11 06:41a

p.13


CALIFORNIA
ASSOCIATION
OF REALTORS®

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
(Listing Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 11/09)

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction.
This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.
I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _Malcolm D. Pruitt_ Date _9/7/11_

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _Foyle D. Pruitt_ Date _9/7/11_

Agent _JohnHart Corp._ DRE Lic. # _01873088_
       Real Estate Broker (Firm)

By _____ DRE Lic. # _01211483_ Date _09/02/2011_
   (Salesperson or Broker-Associate) Harout Keuroghlian

AGENCY DISCLOSURE COMPLIANCE (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

**(SELLER/LANDLORD: DO NOT SIGN HERE)**      **(SELLER/LANDLORD: DO NOT SIGN HERE)**
Seller/Landlord _____ Date _____    Seller/Landlord _____ Date _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____


EQUAL HOUSING
OPPORTUNITY

AD REVISED 11/09 (PAGE 1 OF 2)

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

Agent: Harout Keuroghlian    Phone: 818-246-1099    Fax: 888-965-6161    Prepared using zipForm® software
Broker: John Hart Corp. 1025 N. Brand Blvd. #320 Glendale, CA 91202

## CIVIL CODE SECTIONS 2079.13 THROUGH 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of this title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(f)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent which becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property which constitutes or is improved with one to four dwelling units, any leasehold in this type of property exceeding one year's duration, and mobile homes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(n)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(o)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17 (a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form.

_____ (DO NOT COMPLETE. SAMPLE ONLY) _____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

_____ (DO NOT COMPLETE. SAMPLE ONLY) _____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent)                                                                    ☐ both the buyer and seller.

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Copyright © 1991-2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
AD REVISED 11/09 (PAGE 2 OF 2)

Buyer's/Tenant's Initials ( _____ ) ( _____ )
Seller's/Landlord Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Calvine Road

 **CALIFORNIA ASSOCIATION OF REALTORS®**

# SELLER'S ADVISORY
### (C.A.R. Form SA, Revised 11/10)

Property Address: *5820 Calvine Rd., Sacramento  CA  95823* _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If the Property you are selling is a residence with one to four units, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordinance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act.
      (4) If the TDS, NHD, or lead, military ordinance, commercial zone or Mello-Roos disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

**SA REVISED 11/10 (PAGE 1 OF 2)**

Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____

 EQUAL HOUSING OPPORTUNITY

### SELLER'S ADVISORY (SA PAGE 1 OF 2)

| Agent: Harout Keuroghlian | Phone: 818-246-1099 | Fax: 868-965-6161 | Prepared using zipForm® software |
|---|---|---|---|
| Broker: John Hart Corp. 1025 N. Brand Blvd. #320 Glendale, CA 91202 | | | |

Property Address: 5820 Calvine Rd., Sacramento, CA  95823 _____ Date: September 2, 2011

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your a to sell your Property at a specified price.
   B. **Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some o exemption applies and is documented.
   C. **Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to le protected classes is a violation of the law.
   D. **Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not lim to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding written statemen compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, insta low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the re standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of complia
   E. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repai painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-ba paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for r information.
   F. **Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You sh consult an appropriate professional for advice on these matters.
4. **MARKETING CONSIDERATIONS:**
   A. **Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to n yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports shoul disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspec covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify i purchase agreement those recommendations, if any, for which you are going to pay.
   B. **Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan fo Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. I event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concer contacting the home protection company.
   C. **Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, pla a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the prem may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, vandalism, damage, and other harm.
   D. **Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your d and obligations to the buyer of your Property.
5. **OTHER ITEMS:** _____

_____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.
Seller _____ Date 9/7/11
Print Name Malcolm D. Pruitt

Seller _____ Date 9/7/11
Print Name Twyla D. Pruitt

Real Estate Broker JohnHart Corp.                      By _____
                                                          (Agent) Harout Keuroghlian
Address 1025 N. Brand Blvd. Suite # 320    City Glendale        State CA    Zip 91202
Telephone (818)245-1099    Fax (888)955-5161    E-mail Harout@jhhre.com

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDIT ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ES TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ | Date _____ |

SA REVISED 11/10 (PAGE 2 OF 2)              **SELLER'S ADVISORY (SA PAGE 2 OF 2)**              Calvine

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## SHORT SALE INFORMATION AND ADVISORY

### (C.A.R. Form SSIA, 11/10)

This Short Sale Information and Advisory is intended to give general information regarding short sales, their potential impact, and the rights and responsibilities of the parties involved. It is not intended as legal advice for any particular property owner or buyer. Seller and Buyer should consult with their own professional advisors for legal, tax, credit and personal advice. Real estate brokers will not provide such advice.

1. **WHAT IS A SHORT SALE:** A short sale is the name used to describe a real estate transaction where the seller's lender(s) agree to allow the property owner to sell the property for less than the amount of the loan(s) secured by the property. The consent of the seller's lender(s) is necessary because without it there would not be enough money from the sale to pay off the lender(s) in full and to pay other costs of the sale. As a result, the lender's lien(s) would remain on title, and the seller would be unable to transfer title to the buyer free of monetary liens. (Properties that are worth less than the amount owed to the secured lender(s) are often referred to as being "underwater" or distressed properties).

2. **ALTERNATIVES TO A SHORT SALE:** Owners of distressed or underwater properties are faced with difficult choices that could have financial and emotional consequences. Any of the following or other alternatives potentially have negative tax or credit consequences, or both, for the owner:
   A. **A loan modification** is an arrangement between a borrower and a lender. It can involve a reduction in the interest rate on the loan, a deferment in payments on the loan, an extension of time to pay back the loan, a reduction in principal of the loan, a combination of these possibilities, or other changes to the repayment plan. A loan modification requires the consent of both lender and borrower.
   B. **A foreclosure** is a legal process through which the lender acquires title to the property from a borrower who has stopped making payments on a loan. The lender can foreclose whether or not the borrower consents.
   C. **A deed in lieu of foreclosure** occurs when the borrower offers to transfer the property to the lender, in lieu of the lender having to go through the foreclosure process, and the lender agrees to accept title to the property from the borrower and forgives the debt. A deed in lieu of foreclosure requires the consent of both lender and borrower.
   D. **Bankruptcy** is a legal action typically filed by a borrower to have debt(s) discharged. An automatic stay occurs as soon as a borrower files bankruptcy, staying all actions against the borrower. While a petition for bankruptcy can have the effect of delaying a foreclosure, it does not necessarily prevent a foreclosure from eventually occurring. No lender consent is required for a borrower to file bankruptcy.

3. **LENDER AGREEMENT TO SHORT SALE:** In order for a short sale to be completed, the lender(s), at a minimum, must agree to release the property from the lender(s) lien(s) to allow the sale. The lender(s) may or may not agree to reduce the amount owed to satisfy the debt. If not, the lender(s) may continue to pursue the borrower for payment of the balance of the debt. Prior to granting approval of the sale, the lender(s) may require the borrower to disclose all of the borrower's assets. They may require that the borrower liquidate other assets. They may require that the borrower sign an agreement to repay some or all of the debt at some later time. They may require that the borrower secure the unpaid debt with other assets owned by the borrower. Additionally, they will generally require that the transaction be arm's length, and that all terms of any benefit conferred on the seller be fully disclosed and that the Seller cannot stay in the Property following the Sale. Finally, many first lien holders will limit the amount they will allow to be paid to a second lienholder, further complicating negotiations for the short sale. The lender will usually submit a "term sheet" to the borrower indicating the terms to which lender(s) will agree. If the Seller and Buyer do not modify their contract to comply with the lender(s) terms, the lender(s) may not permit the short sale to proceed. Seller is strongly advised to seek legal and tax advice regarding review of the term sheet. Brokers cannot and will not give legal or tax advice on the lender's term sheet or its effect on the Buyer and Seller's agreement or on the consequences to Buyers and Sellers should they proceed to close. There is no assurance that once the lender(s) have begun short sale negotiations, they will discontinue the foreclosure process.

4. **SELLER'S CONTINUING LIABILITY ON THE DEBT:** Many borrowers who attempt a short sale are concerned with whether the borrower is released from any further liability to the lender(s) or whether the lender can pursue the borrower for any unpaid balance of the debt. Some refer to continuing liability as a deficiency judgement. Generally speaking, a deficiency judgement is the right of a lender to pursue the borrower for the difference between the amount the lender receives and the amount the borrower owes on the debt. Deficiency judgements in California are prohibited in certain circumstances.

Buyer's Initials ( _____ )( _____ )                    Seller's Initials ( _____ )( _____ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
SSIA REVISED 11/10 (PAGE 1 OF 3)

| Reviewed by _____ Date _____ |

**SHORT SALE INFORMATION AND ADVISORY (SSIA PAGE 1 OF 3)**

| Agent: Harout Keuroghlian | Phone: 818-246-1099 | Fax: 888-965-6161 | Prepared using zipForm® software |
| Broker: John Hart Corp. 1025 N. Brand Blvd. #320 Glendale, CA 9120[ | | | |

5820 Calvine Rd.
Property Address: <u>Sacramento, CA  95823</u>                         Date: <u>September 2, 2011</u>

**A. Short Sale:**

1. While deficiency judgement laws in California apply to foreclosure proceedings, these restrictions do no necessarily apply to lender(s) ability to pursue a borrower for unpaid balance on a loan following a short sale. foreclosure is an involuntary legal proceeding resulting in loss of property by the borrower. A short sale, on th other hand, is a consensual agreement between borrower and lender(s). As a result, some lenders in negotiating short sale will want the owner to sign a note for the balance of the unpaid principal. Other lenders will release th lien only but not forgive the underlying debt. Some lenders will "reserve their rights." One of the reasons for th seemingly inconsistent lender terms is that the lenders fund loans in many states throughout the country and man states do not have the same anti-deficiency rules as California. Thus, whether lender retains the right to pursue deficiency following a short sale becomes a negotiable term for each sale.

2. Beginning January 1, 2011, a lender who approves a short sale is not permitted to seek a deficiency against th borrower if the loan is secured by a first Trust Deed on residential property containing 1-4 units. The January 2011 law does not apply to (i) short sale approvals by junior lienholders or (ii) senior lienholders on other types o property or (iii) a Borrower who has committed fraud or waste.

**B. Purchase Money Loans:** Loans given by lenders to purchase 1-4 unit properties, one of which will be occupied b the borrower, and seller-financed purchases are subject to "purchase money" anti-deficiency protection rules Generally, this means that the lender cannot pursue the borrower for any deficiency after the property is foreclose upon by the seller or lender, whether the seller or lender uses a non-judicial trustee sale or a judicial foreclosure Refinancing a purchase money loan causes it to lose any purchase money protection it might have.

**C. Trustee Sales:** If a lender **forecloses** by non-judicial trustee sale instead of by judicial foreclosure, that lender i barred from seeking any deficiency from the borrower after the trustee sale, even if the loan was not purchase money

**D. Refinanced Liens:** The anti-deficiency protections become much less clear for loans that are refinanced. Generally loans that are refinanced lose their "purchase money" protection. Lenders extending refinances may be able t pursue a deficiency judgment against the borrower directly following a judicial foreclosure.

**E. Junior Liens:** The anti-deficiency protections for Junior Liens are also somewhat unclear. Junior liens used t purchase the residence (such as 90/10 first and second) would have "purchase money" protection generally However, junior liens that are refinanced or junior liens that are used to take out equity do not have "purchase money protection. Such "non purchase money" junior lienholders may be able to pursue a deficiency judgement against th borrower directly after a Trustee sale by a senior lienholder or after a judicial foreclosure by the junior lienholde Although the law is not entirely clear, home equity loans (HELOCs) may fall into this category.

**5. CREDIT AND TAX CONSEQUENCES:**

**A. CREDIT:** All of the owner's options discussed above will most likely have a negative impact on the owner's credit an on the owner's ability to finance or purchase property for some time. The credit impact and length of time the owne would have difficulty in obtaining a loan to purchase property again, or to be approved for any other cred transactions such as obtaining a credit card, leasing an apartment, or even to gain employment, varies. Lenders ma view short sales and alternatives differently depending on their own underwriting guidelines and those established b governmental or quasi-governmental bodies. To find out more information about the impact to your credit score, go t www.myfico.com.

**B. TAX:** With some exceptions, a reduction or discharge of a debt obligation by a lender results in income to th borrower. The income might not be taxable if the debt was being used to purchase, build, or substantially improve borrower's principal residence. Another exception exists if the forgiveness of debt results from a situation where th lender is barred by law from collecting the debt, as in a foreclosure of purchase money debt. Insolvency an bankruptcy rules can also shield a borrower from forgiveness of debt income. Generally, when any debt is forgiven b a lender, they are required to provide the borrower a 1099 and it will be up to the borrower to make the proper clai on their tax return to avoid debt forgiveness income. Some of these rules are temporary, and state laws and feder laws differ. Broker has advised Seller that if Lender agrees to accept less than full payment, the difference may resu in taxable income to Seller even though Seller does not receive any cash proceeds from the sale. Seller may also b taxed on the gain in value of the Property from the date of Seller's purchase to the date of sale, regardless of th amount of any existing Loans/Liens.

**C. PROFESSIONAL ADVICE:** Seller advised to discuss with an attorney, CPA or other professional of Seller's choosin before (i) accepting any offer to present to lender or (ii) agreeing to any changes requested by lender to an alread accepted contract.

**6. POTENTIAL IMPROPRIETIES:** It is an unfortunate reality that many persons, including real estate licensees, mortgag lenders, and attorneys, among others, have taken advantage of owners of underwater or distressed properties. Some the schemes present themselves as "rescues" of the homeowner, promising to let them stay in the property, to prote their credit, or to provide payments to them after closing, and usually outside of the escrow. Both the Californ Department of Real Estate (DRE) (http://www.dre.ca.gov) and the California Attorney General (http://www.ag.ca.go have issued written warnings of potential red flags in short sales and other rescue schemes. Some of these red flags are:

Buyer's Initials ( _____ )( _____ )                                              Seller's Initials ( _____ )( _____ )
Copyright © 2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
SSIA REVISED 11/10 (PAGE 2 OF 3)

| Reviewed by | | Date | |

**SHORT SALE INFORMATION AND ADVISORY (SSIA PAGE 2 OF 3)**                         Calvine Ro

5820 Calvine Rd.
Property Address: Sacramento, CA 95823                      Date: September 2, 2011

A. **No license:** The DRE believes that a real estate license is generally required to negotiate any short sale;
B. **Up-front fees:** No real estate licensee can collect any up-front or advance fee without having first obtained a "no objection" letter from the DRE and no up-front fees may be taken for arranging a loan modification;
C. **Surcharges:** Charges by third parties that are not disclosed to the short sale lender and usually paid outside of escrow;
D. **Straw buyers and house flipping:** Buyers misrepresent the value of the property to the short sale lender and flip the property to another buyer already in place;
E. **Other:** Other potential red flags include: guarantees to stop the foreclosure; instructions not to contact the lender; transfer of title prior to close (often to a trust) as a condition of negotiating with the lender; the buyer is an LLC; the buyer wants a power of attorney from the seller; and the buyer hires the third party negotiator or wants to negotiate directly with the lender.
While most of the activities on the above list on their face are not fraudulent, they serve as warning signs that the owner and the real estate agents involved should proceed with caution.

7. **BUYER CONSIDERATIONS:** Short sales are often difficult transactions taking considerably longer that a typical real estate transaction to complete. There is no guarantee that the lender or lenders will agree to the terms of the purchase offer or that they will respond in any timely fashion or even respond at all. There is no guarantee that the seller will agree to any terms proposed by the lender as a condition of releasing the lien or the debt on the property. Buyers may expend money on inspections, loan applications, escrow fees and other costs that they will not be able to recover from anyone if the lender does not approve the transaction. Buyers may also have difficulty obtaining the return of their deposit in escrow, if the seller becomes noncommunicative during the short sale process. Generally, sellers also have the right to continue to give offers to their lender(s) even if they have a contract with an existing buyer. Brokers cannot give any assurances as to what will happen. Buyers are strongly cautioned that any undisclosed and unapproved payments to junior lienholders or to seller or to outside third party negotiators may be a form of lender fraud. Buyers are also strongly cautioned that writing offers on more than one short sale property with the intent to purchase only one such property could be a misrepresentation giving rise to legal claims by the seller including a claim for the buyer's deposit.

8. **BROKER ROLE:** A real estate broker cannot give legal or tax advice in connection with any of the options available to the borrower nor can the broker suggest what is the best course of action for the owner. Unfortunately, the owner is faced with extremely difficult choices having a lasting impact on the owner. Owners are strongly cautioned that they must seek legal and tax advice in what is not only a choice impacting taxes and credit, but also personal issues affecting the owner and often the owner's family. The broker's role is to assist the owner with the actual sale of the property in a short sale transaction, not to provide legal or tax advice or to guarantee the best possible outcome for the parties, or to assure the buyer that any particular transaction will be completed. Brokers do not, and cannot, assure that either the Seller or the Buyer will perform on their agreement or that the lender(s) will agree to any of the terms presented. Brokers are not a party to the contract between Buyer and Seller.

9. **BROKER AUTHORITY:** Seller authorizes Broker to: (1) market the Property for sale, (2) contact lenders concerning lender's approval of a Short Sale (C.A.R. Form ARC) and Seller agrees to give Broker any necessary information to negotiate with lender, and (3) advertise in the MLS and other advertising medium that the Property transfer, sales price and payment of commissions are subject to Lenders approval. If lenders will not cooperate, Broker may cancel the listing agreement.

☒ Seller ☐ Buyer _____  Malcolm D. Pruitt  Date 9/7/11
☒ Seller ☐ Buyer _____  Twyla D. Pruitt  Date 9/7/11
☐ Seller ☐ Buyer _____                  Date_____
☐ Seller ☐ Buyer _____                  Date_____

Real Estate Broker (Selling Firm) _____

By (Agent) _____  Date_____

Address _____ City _____ State _____ Zip _____

Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Listing Firm) JohnHart Corp.

By (Agent) _____  Harout Keuroghlian  Date_____

Address 1025 N. Brand Blvd. Suite # 320  City  Glendale  State CA  Zip 91202

Telephone (818)246-1099  Fax (888)965-6161  E-mail Harout@jhhrs.com

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Copyright © 2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
SSIA REVISED 11/10 (PAGE 3 OF 3)

| Reviewed by _____ Date _____ |

**SHORT SALE INFORMATION AND ADVISORY (SSIA PAGE 3 OF 3)**

Calvine Road

# EXHIBIT D

---

B6D (Official Form 6D) (12/07)

In re **Malcolm D Pruitt** , Case No. **2011-45290**

Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | Codebtor | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | Contingent | Unliquidated | Disputed | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxxxxxx1636<br><br>Chase<br>Po Box 1093<br>Northridge, CA 91328 | | - | Opened 5/01/06 Last Active 3/16/11<br>1st Trust Deed<br>SFR (Rental)<br>Location: 5310 Jacinto Ave., Sacramento CA 95823<br>Valued on Eppraisal.com | | | | | |
| | | | Value $ 98,775.00 | | | | 230,749.00 | 131,974.00 |
| Account No. xxxxxxxxx1644<br><br>Chase<br>Po Box 1093<br>Northridge, CA 91328 | | - | Opened 5/01/06 Last Active 8/16/11<br>2nd Trust Deed<br>SFR (Rental)<br>Location: 5310 Jacinto Ave., Sacramento CA 95823<br>Valued on Eppraisal.com | | | | | |
| | | | Value $ 98,775.00 | | | | 57,268.00 | 57,268.00 |
| Account No. xxxxxxxxx7241<br><br>Chase Manhattan Mortgage<br>Attn; Bankruptcy Dept<br>Po Box 24696<br>Columbus, OH 43224 | | J | Opened 11/01/05 Last Active 9/02/11<br>1st Trust Deed<br>SFR (Primary Residence)<br>Location: 8580 Culpepper Drive, Sacramento CA 95823<br>Valued on Eppraisal.com | | | | | |
| | | | Value $ 151,171.00 | | | | 388,778.00 | 237,607.00 |
| Account No. 427011133001<br><br>First Usa/Chase<br>Chase Card Services/Attn: Bankruptcy Dep<br>Po Box 15298<br>Wilmington, DE 19850 | | J | Opened 11/01/05 Last Active 9/16/11<br>2nd Trust Deed<br>SFR (Primary Residence)<br>Location: 8580 Culpepper Drive, Sacramento CA 95823<br>Valued on Eppraisal.com | | | | | |
| | | | Value $ 151,171.00 | | | | 105,967.00 | 105,967.00 |
| **1** continuation sheets attached | | | Subtotal<br>(Total of this page) | | | | 782,762.00 | 532,816.00 |

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com                    Best Case Bankruptcy

In re __Malcolm D Pruitt__ ,      Case No. __2011-45290__

                                            Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxx6347 <br><br> **Gmac Mortgage** <br> **3451 Hammond Ave** <br> **Waterloo, IA 50702** | | J | **Opened 2/01/07 Last Active 9/15/10** <br> **1st Trust Deed** <br> **SFR (Rental)** <br> **Location: 5820 Calvine Road, Sacramento, CA 95823** <br> **Valued on Eppraisal.com** <br> Value $      **139,378.00** | | | | **364,182.00** | **224,804.00** |
| Account No. xxxxxx7344 <br><br> **Specialized Loan Servi** <br> **Attn: Bankruptcy** <br> **Po Box 636005** <br> **Littleton, CO 80163** | | J | **Opened 1/01/07 Last Active 8/19/11** <br> **2nd Trust Deed** <br> **SFR (Rental)** <br> **Location: 5820 Calvine Road, Sacramento, CA 95823** <br> **Valued on Eppraisal.com** <br> Value $      **139,378.00** | | | | **29,868.00** | **29,868.00** |
| Account No. xxxxx6503 <br><br> **The Golden 1 Credit Un** <br> **8945 Cal Center Dr** <br> **Sacramento, CA 95826** | | - | **Opened 2/01/06 Last Active 9/25/11** <br> **Auto Loan** <br> **2000 Mercedes S500** <br> **Mileage: 80,000** <br> **Valued on Kelly Blue Book** <br> Value $      **9,400.00** | | | | **1,231.00** | **0.00** |
| Account No. <br><br><br><br><br> | | | <br><br><br><br> Value $ | | | | | |
| Account No. <br><br><br><br><br> | | | <br><br><br><br> Value $ | | | | | |

Sheet __1__ of __1__ continuation sheets attached to Schedule of Creditors Holding Secured Claims

| | | |
|---|---|---|
| Subtotal <br> (Total of this page) | 395,281.00 | 254,672.00 |
| Total <br> (Report on Summary of Schedules) | 1,178,043.00 | 787,488.00 |